UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Shelby Winning, | : | Case No. 5:07CV3688 |
| | : | |
| Plaintiff | : | Judge Kathleen O'Malley |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in her favor and defendant seeks final judgment upholding the decision below.

Plaintiff's right to benefits under both programs is dependent upon a showing that she is disabled, as that term is defined in the Social Security Act. Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months." 42 U.S.C. §§423(d)(1), 1383c(a). The programs differ with regard to other qualifying criteria. The disability benefits statute requires "fully insured" status, which focuses on the period of time the claimant has worked while covered by Social Security. The SSI

program focuses on income and resources as basic eligibility factors.

Plaintiff applied for benefits on January 26, 2005, alleging an onset date of January 22, 2003.[1]  In a Disability Report - Adult which carries a submission date of April 26, 2006 the questions "What are the illnesses, injuries, or conditions that limited your ability to work?" and "How do your illnesses, injuries, or conditions limit your ability to work?" were answered "Depression sleep deprivation, arthritis, back pain, tendinitis, carpal tunnel, insomnia" and "I can not take any job which requires standing for any length of time due to back pain. I am limited in the use of my hands and arms due to carpal tunnel, tendinitis, arthritis, and bursitis in both hands and arms. I am severely depressed, including extreme insomnia resulting in a sleep deprivation. Multiple symptoms from peri-menopause severely limited my abilities to do anything 2 - 2½ weeks each month. Medication attempts have not solved this difficulty. I have short term memory problems. Not all of my symptoms have been diagnosed and are not listed here, because I do not have the funds to seek medical exam/diagnosis."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on January 11, 2007. Also testifying at that proceeding were a medical expert, Dr. Ronald Kendrick, and a vocational expert, Ms. Lynne Kaufman.[2]

At the outset of the hearing plaintiff's counsel acknowledged that although the plaintiff complained of a variety of physical ailments "the only impairment actually treated or diagnosed is back pain, so from a physical standpoint, I would submit that the back pain is her severe

---

[1] The SSI application was granted a protective filing date of December 20, 2004.

[2] It appears that the hearing was by teleconference, with the ALJ and the two expert witnesses in Columbus and the plaintiff and her counsel in Mansfield.

impairment." He continued with the statement:

> Psychologically, however, there are several noted throughout the record, most abundantly being depression or major depressive disorder, also anxiety disorder. There's a personality which her treating psychologist, Gina Patterson, has diagnosed as obsessive compulsive personality disorder. There are other notations in the record of a personality disorder, not otherwise specified, and separately, obsessive compulsive tendencies or traits, but I will rely on the treating psychologist['s] diagnosis and submit obsessive compulsive personality disorder as the severe impairment. Also, insomnia is documented throughout the record as a pretty noticeable limitations on her functioning. And lastly, I would just note memory impairments.

Before any testimony was taken the ALJ, in response to plaintiff's counsel's statement that by reason of her multiple impairments the plaintiff should be found to equal two of the Listings of Impairments pertaining to Mental Disorders the ALJ stated "All right. Well you know, I have no psychologist or psychiatrist here[3] and I can't make any decision regarding medically equaling on my own without one so. . .I'll only be able to determine whether or not there's a meeting." This was followed by "Unless I decide to have another hearing or [Inaudible]."

When asked by the ALJ "what impairments keep you from working?" the plaintiff responded "Mostly the memory problems and my back problems and the depression, the anxiety." The plaintiff then testified that her memory problems had started when she was in her 30's but "its gotten much worse over the last three to five years." With regard to her back the plaintiff stated that "I'm not able to do anything that requires standing for any period of time and even sitting, the job I had at MBNA, I had a foot stool with me all the time. . .to elevate my feet to elevate some of the back pain," and "any degree of physical activity, especially bending exacerbated her back pain." She later

---

[3]Dr. Kendrick's area of speciality is not reflected on the record, as his answer to the question "what is your speciality?" is shown as inaudible.

testified to her mental/emotional problems, stating that she suffered from "depression at a seven [on a scale of one to ten] level. . .somewhere between a week and a half to two and a half weeks [monthly]," and that she also suffered from anxiety daily, triggered by "unidentified sounds or noises." which subsides after several minutes.

Dr. Kendrick's testimony was limited to the subject of the plaintiff's physical state, and when he was asked by the ALJ "And in your opinion, do the plaintiff's impairments either meet or equal the listing [Inaudible]?" he replied "I would only be addressing the physical impairments, not the mental." He then testified:

> Q. And would you please give me a function by function RFC?
>
> A. yes. I believe she has no impairment in regard to her ability to sit, she can stand and/or walk for one hour at a time for a total of three hours in a day, she can bend occasionally, do stairs occasionally, lift ten pounds occasionally and five pounds or less, less frequently, and there's no impairment in her ability to use her upper extremity as indicated in the record.
>
> Q. And what would limit the claimant to only three hours of standing and walking in an eight hour day?
>
> A. This would be consistent with degenerative back disease and her testimony.
>
> Q. Given the fact that the claimant's degenerative disc disease is only mild in nature, would you still say that she can only walk for a total of three hours?
>
> A. It's like anything else in medicine, you have to take the patient's word for it that she has disc disease. Some people, again, will be complaining of that and there's nothing in the record that indicates she can walk more distance, for more time, I mean.
>
> Q. Based on the objective evidence in the record of mild disc disease, is it reasonable to assume that a person would only be able to walk for three hours a day?

> A. No, I think most people could do better than that if there's, when we're talking about standing and/or walking, obviously.
>
> Q. Right. And with lifting and carrying only ten pounds occasionally and five pounds frequently, be the most that could reasonable [sic] be expected, as well as back problems?
>
> A. I think most people could do 20 pounds, but according to her testimony, she could not.
>
> Q. But based on the objective evidence?
>
> A. Yes, I would say that she, objectively, you would expect someone to be able to lift 20 pounds occasionally, and considering her age also.

In her examination of the vocational expert the ALJ posed the following hypothetical:

> I'd like you to assume a hypothetical individual of the claimant's age, education, past relevant work you cited, and assume that she has the physical restrictions noted by Dr. Kendrick, and I'm using the 20 pounds and the six hours of standing and walking, and the mental limitations would be as follows, the hypothetical individual could do simple one or two step tasks involving no intensive and interpersonal interaction, no fast paced work, high production quotas, arbitration, negotiation or confrontation or responsibility for the safety of others, would such an individual be able to do any of the claimant's past relevant work?

Ms. Kaufman answered that such a person could not perform any of the plaintiff's past relevant work, but then testified that there were other jobs at the light level that such a person could perform, specifically identifying the jobs of small parts assembler, carding jobs, and laundry worker. When asked whether that individual could perform the plaintiff's past relevant work or any other jobs if suffering from "the mental limitations that the claimant described in her testimony" the vocational expert stated that the person would not be employable.

In his examination of the vocational expert plaintiff's counsel asked if limitations expressed by the plaintiff's treating psychologist, Dr. Gina Patterson, in a report dated December 26, 2006

5

were credited would the plaintiff be employable. Ms. Kaufman stated that they would preclude all employment.

On March 20, 2007 the ALJ entered her decision finding the plaintiff not disabled, which stands as the defendant's final determination consequent to denial of review by the Appeals Council on October 24, 2007. The ALJ's "Findings," which represent the rationale of decision, were:

1. The claimant met the disability insured-status requirements of the Act on January 22, 2003, her alleged disability onset date, and continues to meet them through March 2008.

2. The claimant has not been engaged in substantial gainful activity since her alleged disability onset date.

3. The claimant has the following impairments that, in combination, reduce her ability to perform basic work-related functions: mild degenerative disc disease of her lumbosacral spine, hypertension (not on medication), depression, anxiety, personality disorder, and mild chronic pain syndrome.

4. The claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in, 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant's subjective complaints are disproportionate with and not supported by the objective and substantial evidence in the record to the extent they suggest that she is disabled.

6. The claimant has the residual functional capacity (RFC) to perform light exertional work, subject to the following: (1) no standing and/or walking for longer than one hour at a time or six hours total in a workday; (2) no more than occasional bending or stair climbing; and (3) no working at heights.

7. The claimant is unable to perform her past relevant work as a telephone solicitor (sedentary exertion, semiskilled).

8. The claimant is now 54 years old and is classified as a person "closely approaching advanced age."

9. The claimant has a high school education.

10. The claimant has no transferable work skills to jobs within her residual functional capacity.

11. Based on a capacity for the full range of light work, and the claimant's age, education, and work experience, 20 CFR 404.1569 and 416.969, and Rule 202.14, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. Based on the vocational expert's testimony, as well as applying the above-cited vocational rule as a framework for decision making, I conclude that the claimant can perform a significant number of jobs in the regional and national economies.

13. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.

On this appeal the following arguments are advanced on behalf of the plaintiff:

1. THE ADMINISTRATIVE LAW JUDGE DID NOT EMPLOY THE PROPER LEGAL CRITERIA IN FINDING THAT PLAINTIFF RETAINS THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM A RANGE OF SEDENTARY, UNSKILLED WORK, AND SUCH FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND

    A. <u>The ALJ erred in failing to evaluate properly Plaintiff's mental impairments.</u>

    B. <u>The ALJ erred in failing to analyze properly the medical opinion evidence.</u>

The fact that counsel erroneously states that the ALJ found the plaintiff capable of performing sedentary work, when the ALJ found the plaintiff capable of light work, while regrettable, is of no real consequence, as the arguments advanced in plaintiff's submission on the merits do not address the ALJ's determination as to the plaintiff's exertional capabilities. The entire focus of the asserted claims of error is upon the plaintiff's non-exertional, i.e., mental/emotional, limitations, it being argued that the ALJ improperly substituted her judgment for that of the plaintiff's treating mental

health professionals.

In this Court's opinion there is no doubt as to the fact that the evidence originating with those treating sources fully supports the plaintiff's claim of disability.

The plaintiff has received mental health counseling for a number of years at the Counseling Center of Wayne and Holmes Counties and/or Everywoman's House in Wooster, Ohio.

Under date of February 17, 2005 Emily Gaul, an LSW, responded to an inquiry to the Counseling Center from the state authorities, that response being signed off by her direct supervisor and by the psychiatrist affiliated with that agency. Therein Ms. Gaul stated that the plaintiff "is unable to return to work due to her mental health status." She also stated that "Shelby has some difficulty with concentration and memory in completing tasks and every day conversation. This is due to insomnia and feeling of anxiety." The statement concluded with:

> 7. Medial Source Statement (MSS). Please describe this patient's ability to:
>
>   a. Remember, understand and follow directions: *Sometimes client is unable to understand directions after repetitive directions are given. Memory is difficult at times.*
>
>   b. Maintain attention: *Shelby is able to maintain focus on her own conversation flow, yet sometimes has difficulty maintaining attention when others speak.*
>
>   c. Sustain concentration, persist at tasks, and complete them in a timely fashion: *Shelby becomes anxious and stressed when challenged with different tasks and often paces herself in order to complete tasks.*
>
>   d. Describe any deficiencies in
>
>     1. Social Interaction: *Conversation often becomes tangential.*
>
>     2. Adaption: *None.*

      e. How would the patient react to the pressures, in work settings or elsewhere, involved in simple and routine, or repetitive, tasks? *Client would require consistent reminders and/or directions to complete tasks. She would have some difficulty completing tasks in a timely manner, and is unable to "multi-task".*

In November 2005 Dr. Patterson wrote plaintiff's counsel and stated, in pertinent part:

> What appears to impair Ms. Winning more than her anxiety and depressive symptoms is her personality disorder. Ms. Winning shows a pervasive pattern of preoccupation with orderliness, perfectionism, and mental and interpersonal control at the expense of flexibility openness, and efficiency. This is called Obsessive-Compulsive Personality Disorder.

> Ms. Winning has shown only mild progress in treatment. Her mood has improved, but her self-limiting behaviors have not. Ms. Winning has had difficulty with attendance due to insomnia. She has generally been cooperative and has followed through with referrals to case management and psychiatry. Her personality disorder interferes with her progress in treatment.

Slightly more than a year later Dr. Patterson completed a Mental Impairment Questionnaire concerning the plaintiff. Therein she stated that she had forty-two one hour sessions with the plaintiff since September 14, 2004, and assigned the plaintiff's GAF of 50, signifying "serious symptoms. e.g. . . .serious impairments in. . .occupational. . .functioning (e.g. . . .unable to keep a job)." Among the plaintiff's signs and symptoms she noted: poor memory; oddities of thought, perception, speech or behavior; deep disturbance, chronic insomnia; difficulty thinking or concentrating; generalized persistent anxiety; and, hostility and irritability. Under "other symptoms and remarks" Dr. Patterson wrote "Extreme circumstantial and tangential speech, rigidity, perfectionism that interferes with task completion." Asked to describe the clinical findings demonstrating the severity of the plaintiff's impairment she responded "In addition to the above endorsed symptoms, Ms. Winning's personality disorder (obsessive-compulsive personality

disorder) limits her the most. She is pre-occupied with details, rules, lists and order that tasks are not completed. She has a very rigid thought process. Simple tasks that should be easily completed take months or are never completed." Dr. Patterson specifically noted that she did not consider the plaintiff to be a malingerer, that the plaintiff' impairments were reasonably consistent with the symptoms and functional limitations described in her evaluation, and that the plaintiff's prognosis was poor. Dr. Patterson opined that the plaintiff's mental impairment would cause her to be absent from work more than three times a month and that "task completion would be a major problem due to pt's personality d/o." Finally, in assessing the degree of limitations the plaintiff suffers from Dr. Patterson rated her at "marked" in "difficulties in maintaining social functioning," "frequent" for "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings)" and "repeated (three or more)" for "Episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include determination of adaptive behaviors)."

Finally, under date of January 3, 2007 Ms. Gaul and her supervisor provided plaintiff's counsel with a letter report which concluded:

> Shelby's insomnia is a major factor in her inability to work. Shelby experiences much difficulty with concentration, short, and long-term memory when she is either unable to sleep or only sleeps a couple of hours a night. I have experienced her "forgetfulness" during our sessions as well as irritability and lack of energy due to lack of sleep. In addition, Shelby's mood is greatly affected by this. Shelby suffers from depression, which is aggravated by lack of sleep.
>
> Although I have seen slight improvements in Shelby's interactions with others, I believe she would have difficulty returning to work in a setting where she would be interacting with others. Her difficulty with concentration, irritability, and, at times, poorly managed anger,

>would create poor customer or employee interactions.
>
>In addition, being employed to complete a hands-on-task or a repetitive task would probably be difficult due to poor concentration and lack of energy.

This Court finds the ALJ's articulated basis for rejecting the evidence originating with the plaintiff's treating mental health professionals to be completely inadequate.

With regard to Dr. Patterson the ALJ stated "Dr. Patterson's assessment appears to be based on the subjective statements of the plaintiff, who is found not to be credible."  How else can a psychologist treat a patient than by the patient's subjective statements?  Who is better qualified to determine the credibility of the plaintiff—a psychologist who saw the plaintiff forty-two times over a two year period, or an adjudicator who observed the plaintiff by way of teleconference, not even face-to-face, for approximately ninety minutes.

The ALJ's statement that "Ms. Gaul's progress notes record little in way of observations and findings" is simply wrong.  This Court has carefully reviewed those extensive progress notes and finds that not only are they replete with observations and findings, but they also reflect that Ms. Gaul and the others who interacted with the plaintiff at the Counseling Center fully supported the plaintiff in her efforts to secure an award of disability benefits.

It is this Court's conclusion that not only is the ALJ's decision in this case plainly violative of the "treating physician" rule, see, Howard v. Commissioner of Social Security, 276 F.3d 235, 240 (6th Cir. 2002), it also contravenes the holding in Rogers v. Commissioner of Social Security, 486 F.3d 234, 247 (6th Cri. 2007), that an "ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'."

It is accordingly recommended that the defendant's final determination be reversed and final

judgment be entered in the plaintiff's favor finding that she is entitled to an award of DIB pursuant to her application of January 26, 2005 and an award of SSI for that period after December 20, 2004 for which she satisfied the economic criteria for such benefits.

                                                        s/DAVID S. PERELMAN
                                                        United States Magistrate Judge

DATE:   May 28, 2009

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).