# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **SHELBY WINNING,** | : | **Case No. 5:07-CV-3688** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | **OPINION & ORDER** |
| **Defendant.** | : | |

This is an action for judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying the applications of the Plaintiff, Shelby Winning, for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.  Pursuant to Local Rule 72.2(b), this matter was referred to Magistrate Judge David S. Perelman for preparation of a Report and Recommendation ("R&R").  In his R&R, the Magistrate Judge recommended that the Commissioner's final administrative decision be reversed and that final judgment be entered in Winning's favor, finding that she is entitled to award of DIB and SSI. (Doc. 24.)  On June 8, 2009, the Commissioner timely objected to the Magistrate Judge's R&R. (Doc. 25.) Winning filed a response to the objection on June 12, 2009. (Doc. 26.)  On June 15, 2009, the Commissioner filed a reply to Winning's response in order to correct a factual error in his objection. (Docs. 27, 28.)  For the reasons articulated herein, while the Court agrees with the recommendation that the Commissioner's final decision be reversed, the Court declines to adopt the R&R to the extent it recommends that final judgment be entered in Winning's favor.  Instead, the

Court **REVERSES** the final administrative decision of the Commissioner and **REMANDS** this case for rehearing and a full and appropriate consideration of Winning's psychological condition and her actual abilities and limitations in the face thereof.

I.        BACKGROUND

    A.        **Factual Background**

Winning was born on October 11, 1952, and was fifty (50) years old at the time of her alleged disability onset date.  At the time of the ALJ's hearing, Winning was fifty-four (54) years old. Winning has a high school education and past relevant work experience as a telemarketer.  She has not been employed since January 24, 2003.

Winning applied for DIB and SSI on January 26, 2005, alleging a disability onset date of January 22, 2003.  While she originally claimed that both physical and psychological conditions preclude her from working, it appears that Winning does not challenge the ALJ's findings regarding her physical impairments.[1]  Instead, she challenges only that portion of the ALJ's decision addressing her psychological condition.  The Court will therefore limit its discussion to the facts relevant to Winning's mental impairments.

The record includes the opinions of five (5) psychologists and psychiatrists: Dr. Gina Patterson, Dr. Humayun Chughtai, Dr. Leslie Rudy, Dr. Caroline Lewin, and Dr. Robert Dallara, Jr. In addition, the record includes written progress notes from Emily Gaul, a licensed social worker and Winning's case manager.

_____

[1]As the Magistrate Judge correctly noted, "the arguments advanced in plaintiff's submission on the merits do not address the ALJ's determination as to the plaintiff's exertional capabilities.  The entire focus of the asserted claims of error is upon the plaintiff's non-exertional, i.e., mental/emotional, limitations, it being argued that the ALJ improperly substituted her judgment for that of the plaintiff's treating mental health professionals."  (Doc. 24, at 7-8).

In September 2004, Winning was referred to Gina Patterson, Psy.D., a psychologist at Every Woman's House, for a psychological evaluation.  Dr. Patterson diagnosed Winning with: (1) major depression, recurrent, moderate; (2) anxiety disorder, not otherwise specified; and (3) deferred obsessive compulsive disorder traits.  (Tr. 151-55.)  Dr. Patterson, moreover, found that Winning had a Global Assessment of Functioning ("GAF") score of 51, indicating "moderate symptoms."[2] (*Id.*)

Winning began seeing Dr. Patterson frequently.  Indeed, it is undisputed between the parties that Dr. Patterson is Winning's treating psychologist and that Dr. Patterson saw Winning forty-two (42) times between September 2004 and December 2006.[3]

On November 1, 2004, Humayun Chughtai, M.D., a psychiatrist at The Counseling Center of Wayne & Holmes Counties ("the Counseling Center"), conducted a psychological evaluation of Winning.  (Tr. 139-41.)  Dr. Chughtai diagnosed Winning with seasonal affective disorder and insomnia due to an unknown cause and assigned Winning a GAF of 70.[4] (*Id.* at 141.)  It is undisputed between the parties that Dr. Chughtai is Winning's treating psychiatrist.  (*See* Doc. 25 at 3; Doc. 26 at 2.)

---

[2]The GAF scale reflects a "clinician's judgment" of the individual's symptom severity or level of functioning.  American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) ("DSM-IV-TR").  A GAF score between 51 and 60 indicates "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning."  *Id.* at 34.

[3]Although the Commissioner initially argued that "Dr. Patterson never reported or suggested that she saw Plaintiff anywhere near 42 times," the Commissioner later conceded in its Response to Plaintiff's Reply to Defendant's Objection to the Magistrate Judge's R&R that Dr. Patterson did, in fact, report seeing Winning 42 times.  (Doc. 28 at 1.)

[4]A GAF score of 61-70 reflects "some mild symptoms" or "some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household) but generally functioning pretty well."  DSM-IV-TR at 34.

Later in November 2004, Emily Gaul, B.A., a licensed social worker with the Counseling Center, became Winning's case manager.  (Tr. 135-37.)  Ms. Gaul noted that Winning experienced anxiety, depression, and confusion due to her insomnia.  (*Id*. at 135.)  Throughout 2005 and 2006, Ms. Gaul provided "community resource needs" to Winning.  (See Tr. 127, 225-47.)  In addition, Ms. Gaul assisted Winning in completing Social Security paperwork, grocery shopping, and budgeting.  (*Id*.)  Ms. Gaul kept regular progress notes relating to her interactions with Winning.  (*Id*.)  The record reveals that Winning saw Ms. Gaul every few weeks and Dr. Chughtai every few months thereafter.

In February 2005, Ms. Gaul prepared a Social Security disability questionnaire on Winning's behalf.  (Tr. 125-26.)  Both Dr. Chughtai and the Counseling Center's supervisor, Brian Gerber, signed off on the questionnaire.  In the questionnaire, they noted, among other things, that Winning has: (1) "some difficulty with concentration and memory in completing tasks and everyday conversation" due to insomnia and anxiety; (2) major depressive disorder and ongoing insomnia; and (3) agitated, anxious, and tangential flow of conversation and speech.  (*Id*.) With respect to Winning's ability to handle a work setting, they noted that she (1) is sometimes "unable to understand directions after repetitive directions are given;" (2) "would require consistent reminders and/or directions to complete tasks;" (3) would have "some difficulty completing tasks in a timely manner;" and (4) is not able to multitask.  (Tr. 126.)

In March 2005, Dr. Patterson completed a Social Security disability questionnaire in which she noted that Winning could follow simple, short commands but that she has poor memory and poor concentration which would interfere with her ability to follow complex directions.  (Tr. 148-50.)  Dr. Patterson further noted that Winning is easily distracted and that her extreme attention to detail makes completing tasks in a timely manner difficult.

4

In May 2005, Leslie Rudy, Ph.D., a state of Ohio Bureau of Disability Determination ("BDD") psychologist, reviewed Winning's medical file and completed a Psychiatric Review Technique Form on behalf of the state.  (Tr. 182-95.)  Dr. Rudy found that Winning's mental impairments mildly restricted her activities of daily living, caused moderate difficulties in maintaining social functioning, and caused moderate difficulties in maintaining concentration, persistence, and pace.  (*Id.* at 192.)  Dr. Rudy found that Winning did not meet or medically equal a listing but had limitations which necessitated a Residual Functional Capacity ("RFC") assessment.  In the RFC, Dr. Rudy found that Winning was "moderately limited" in 13 of 20 work-related abilities.  (Tr. 196-98.)  Dr. Rudy further noted that Winning's allegations were consistent with the medical evidence of record and "are considered credible." (*Id.* at 198.)  She concluded that Winning could remember and follow simple task instructions and maintain attention and concentration.  As a result, Dr. Rudy found that Winning would do best in a work setting that "does not require a lot of interactions with others and is predictable and does not have strict production quotas." (*Id.*)

In August 2005, Caroline Lewin, Ph.D., a BDD psychologist, reviewed the updated record on behalf of the state and affirmed Dr. Rudy's assessment. (Tr. 182-99.)

In November 2005, Dr. Patterson summarized her treatment records with respect to Winning and opined that "[w]hat appears to impair Ms. Winning more than her anxiety and depressive symptoms is her personality disorder.  Ms. Winning shows a pervasive pattern of preoccupation with orderliness, perfectionism, and mental and interpersonal control at the expense of flexibility, openness, and efficiency.  This is called Obsessive-Compulsive Personality Disorder." (Tr. 222-23.)  Dr. Patterson further noted that Winning had shown only mild progress in treatment and that while her mood has improved, her self-limiting behaviors have not.

On July 28, 2006, Robert Dallara, Jr., Ph.D., conducted a psychological evaluation of

Winning at the request of the state.  (Tr. 302-10.)  Dr. Dallara administered an IQ test and a personality inventory test.  He diagnosed Winning with major depression and personality disorder, not otherwise specified, and assigned a GAF score of 55.  (*Id*. at 305.)  With respect to Winning's work-related mental abilities, Dr. Dallara indicated that: (1) her ability to work with others "appears to be moderately impaired due to the combination of personality difficulties and her depression;" (2) her ability to understand instructions appears adequate but her ability to remember and carry out simple one or two step instructions is mildly impaired; (3) her ability to maintain attention and concentration is mildly impaired; and (4) her ability to "withstand stress and pressure associated with day-to-day work activity appears to be mildly impaired as a result of her depression.  (*Id*. at 306.)  Dr. Dallara found that Winning would have slight impairment in interacting appropriately with the public and responding appropriately to work pressures in a usual work situation.  (*Id*. at 309.)  He further found that Winning would have moderate impairment in interacting appropriately with supervisor(s) and co-workers.  (*Id*.)

In December 2006, Dr. Patterson completed a Mental Impairment Questionnaire for Winning.  (Tr. 322-28.)  In the questionnaire, Dr. Patterson noted that she had seen Winning a total of forty-two (42) times since September 2004.  (*Id*. at 324.)  Dr. Patterson diagnosed Winning with: (1) major depression, chronic; and (2) obsessive-compulsive personality disorder.  She assigned Winning a current GAF score of 50.[5]  (*Id*.)  Dr. Patterson noted that Winning possessed the following signs and symptoms: poor memory; weight gain; mood disturbance oddities of thought, perception, speech or behavior; social withdrawal or isolation; anhedonia or pervasive loss of interests; feelings of guilt/worthlessness; difficulty thinking or concentrating; decreased energy; intrusive recollections

---

[5]A GAF score of 41-50 indicates "serious symptoms" or "serious impairment" in social, occupational, or school functioning.  DSM-IV-TR, 32-34.

6

of a traumatic experience; generalized persistent anxiety; hostility and irritability. (*Id*. at 324-25.) Dr. Patterson noted "extreme circumstantial and tangential speech, rigidity, perfectionism that interferes with task completion." (*Id*.)

With respect to clinical findings demonstrating Winning's mental impairments and symptoms, Dr. Patterson noted that "Ms. Winning's personality disorder (obsessive-compulsive personality disorder) limits her most. She is [so] pre-occupied with details, rules, lists and order that tasks are not completed. She has a very rigid thought process. Simple tasks that should be easily completed take months or are never completed." (*Id*. at 325.) Dr. Patterson indicated that Winning would have difficulty working a regular job on a sustained basis and that "[t]ask completion would be a major problem due to pt.'s personality [disorder]. Acting appropriately socially is impaired due to [personality disorder] and irritability from [depression]." (*Id*. at 327.)

Finally, Dr. Patterson assessed the degree to which Winning's mental impairments caused limitations. Dr. Patterson specifically noted that Winning would have moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and repeated episodes of deterioration or decompensation in work or work-like settings. (*Id*. at 328.)

In January 2007, Ms. Gaul summarized her assessment of Winning's mental health symptoms. (Tr. 329-30.) Based on her two-year working relationship with Winning, Ms. Gaul noted that Winning's "insomnia is a major factor in her inability to work." (Tr. 329.) Ms. Gaul opined that Winning would "have difficulty returning to work in a setting where she would be interacting with others" and that her "difficulty with concentration, irritability, and, at times, poorly managed anger, would create poor customer and employee interactions." (Tr. 330.) Finally, Ms. Gaul noted that Winning would have difficulty completing hands-on or repetitive tasks due to poor

7

concentration and lack of energy.

## B.    Procedural Background

Winning first filed for SSI on December 20, 2004.  On January 26, 2005, Winning applied

for DIB and SSI, alleging a disability onset date of January 22, 2003.  In her applications, Winning

claimed disability as a result of arthritis, back pain, tendinitis, carpal tunnel, depression, insomnia,

sleep deprivation, anxiety, and personality disorder. Her application was denied both initially and

on reconsideration.  Thereafter, Winning requested a *de novo* hearing before an Administrative Law

Judge ("ALJ").

### 1.    Administrative Hearing

On January 11, 2007, an evidentiary hearing was conducted via video teleconference before

ALJ Patricia D. Yonushonis.  Winning appeared in Mansfield, Ohio, and the ALJ presided over the

hearing from Columbus, Ohio.  Winning was represented by counsel and accompanied at the hearing

by her case worker, Emily Gaul.  During the hearing, the ALJ heard testimony from Winning, Dr.

Ronald Kendrick, who testified as a medical expert ("M.E."), and Lynne Kaufman, a vocational

expert ("V.E.").  Both the M.E. and V.E. testified at the hearing from Columbus.

As previously indicated, because Winning does not challenge the ALJ's decisions with

respect to her exertional capabilities, this Court will only focus on those portions of the ALJ's

decision which deal with Winning's psychological impairments and limitations.

At the outset of the hearing, Winning's counsel and the ALJ engaged in the following

colloquy in which the ALJ noted that she did not have a psychological expert to testify at the hearing,

and suggested that perhaps another hearing involving a psychological expert would be necessary:

> ATTY:    Yes, Your Honor, I would say if you find reason not to assign full weight to
> Dr. Patterson's opinion, that her opinion ought to be given some weight
> nonetheless and that in combination, her multiple psychological impairments

> would meet or equal the listed impairments, again, either 12.04 or 12.08 in, they would medically equal in severity.

ALJ:    All right.  Well, you know, I have no psychologist or psychiatrist here and I can't make any decision regarding medically equaling on my own without one, so . . . I'll only be able to determine whether or not there's a meeting . . . [u]nless I decide to have another hearing.

(Tr. 364-65).  Dr. Kendrick, the only M.E. who was present at the hearing, specifically indicated, in response to the ALJ's question of whether the claimant's impairments meet or equal a listing, that he "would only be addressing the physical impairments, not the mental." (Tr. 396.)

Winning testified that her memory and back problems, coupled with depression and anxiety, kept her from working.  (Tr. 366.)  Regarding her daily activities, Winning testified that she cooks roughly four times per week, reads, does laundry, goes grocery shopping, does some gardening, watches television, occasionally socializes with her sister and friends, and "almost never" goes out to dinner. (Tr. 376, 384-88.)

In her questioning of the vocational expert, the ALJ first asked Ms. Kaufman to assume a hypothetical individual with the following mental limitations: the person "could do simple one or two step tasks involving no intensive and interpersonal interaction, no fast paced work, high production quotas, arbitration, negotiation or confrontation or responsibility for the safety of others." (Tr. 400.)  Ms. Kaufman indicated that although such an individual would not be able to do Winning's past relevant work as a telemarketer, the individual would be able to do some light work, including small parts assembler, "some cording jobs," sorter, and laundry worker.  (Tr. 401.)

The ALJ then asked Ms. Kaufman to assume a hypothetical individual with the mental

limitations that Winning described in her testimony.[6]  (Tr. 402).  Ms. Kaufman indicated that such an individual would not be able to do any of her past relevant work.  (*Id*.).  Ms. Kaufman further testified that such an individual would not be able to do any other light work in the economy that is unskilled. (Tr. 402-403.)  In addition, Ms. Kaufman testified that if  the limitations expressed in Dr. Patterson's December 2006 questionnaire were accepted as true, such impairments would preclude Winning from employment. (Tr. 403-404.)

## 2.  ALJ Decision

On March 20, 2007, the ALJ issued a decision finding that Winning was not disabled and therefore not entitled to DIB or SSI payments.  In accordance with the requisite five-step analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920, the ALJ reached the following conclusions:

1. Winning has not engaged in substantial gainful activity since January 22, 2003, her alleged disability onset date;

2. Winning suffers from the following impairments: mild degenerative disc disease of

---

[6]ALJ:  Take the same hypothetical individual with the physical limitations given by Dr. Kendrick and the mental limitations that the claimant described in her testimony, would such an individual be able to do any of her past relevant work?

VE:  I don't believe she could.

ALJ:  Would she be able to do any other light work in the economy that's unskilled?

VE:  I don't think so.  I think her description of her mental functions - -

ALJ:  What specific - -

VE:  Well, she talked about several areas ranging from fair, well, there were a couple, there was one there with a poor [INAUDIBLE] co-workers, but then there were several that range from fair to poor to none.  Significantly, if we were dealing with public, supervisors, her emotional stability and then [INAUDIBLE], I mean, I think when you look at those things [INAUDIBLE], it would be difficult to maintain work.

(Tr. 402-03.)

her lumbosacral spine, hypertension (not on medication), depression, anxiety, personality disorder, and mild chronic pain syndrome;

3.    These impairments do not meet or medically equal any of the listed impairments in the regulations (specifically, § 12.04: affective disorders; § 12.06: anxiety-related disorders; § 12.08: personality disorders);

4.    Winning's impairments prevent her from performing her past relevant work as a telephone solicitor; and

5.    Winning has the residual functional capacity ("RFC")[7] to perform "light exertional work" and therefore she can perform "a significant number of jobs in the regional and national economies."

(Tr. 21-22.)

With respect to the final prong in the analysis, the ALJ found Winning's RFC subject to the following restrictions: (1) no standing and/or walking for longer than one hour at a time or six hours total in a workday; (2) no more than occasional bending or stair climbing; and (3) no working at heights. (Tr. 21.) The ALJ concluded, therefore, that Winning does not suffer from a "disability," as that term is defined in the Social Security Act.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 24, 2007. (Tr. 5-7.)

### 3.    The Magistrate Judge's Report & Recommendation

On December 3, 2007, Winning filed the instant civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner's decision. Winning argued that "substantial evidence" does not support the ALJ's determination that Winning retains the RFC to perform a range of sedentary, unskilled work. (Doc. 20 at 21.) Winning specifically claimed that:

---

[7]An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p ("Assessing Residual Functional Capacity in Initial Claims").

(1) the ALJ's decision did not evaluate properly Winning's mental impairments; and (2) the ALJ failed to consider properly the medical opinion evidence in the record. (*Id*. at 22-29.)

First, Winning argued that the ALJ was "without the guidance of a psychological medical expert to help review and consider the vast majority of the medical evidence," and that, at a minimum, remand is appropriate for psychological expert testimony to evaluate the evidence and to determine whether Winning's testimony was symptomatic of her mental impairment. (*Id*. at 23-25.) Second, Winning asserted that the ALJ failed to give good reasons for rejecting the opinion of Winning's treating psychologist, Dr. Patterson, and did not explain the weight given to the opinion of Winning's long-time caseworker, Ms. Gaul. (*Id*. at 26-28.)

Magistrate Judge Perelman concluded that the ALJ's decision is "plainly violative of the 'treating physician' rule." (Doc. 24 at 11.) Specifically, the Magistrate Judge found that the ALJ's stated basis for rejecting the evidence provided by Dr. Patterson and Ms. Gaul was inadequate. (*Id*.) The Magistrate Judge further noted:

> With regard to Dr. Patterson the ALJ stated 'Dr. Patterson's assessment appears to be based on the subjective statements of the plaintiff, who is found not to be credible.' How else can a psychologist treat a patient than by the patient's subjective statements? Who is better qualified to determine the credibility of the plaintiff – a psychologist who saw the plaintiff forty-two times over a two year period, or an adjudicator who observed the plaintiff by way of teleconference,[8] not even face-to-face, for approximately ninety minutes.

(*Id*. at 11.)

The R&R concluded that the ALJ's final determination should be reversed, and that judgment should be entered in Winning's favor, finding that she is entitled to an award of DIB and an award

---

[8]The record reflects that the hearing was conducted via video teleconference, not by telephone. Pursuant to a Notice of Hearing date-stamped December 6, 2006, Winning was notified that the hearing would be conducted via video teleconference and was given an opportunity to reschedule the hearing and request an in-person appearance at the next available hearing date. (Tr. 23-28.)

of SSI for that period after December 20, 2004 for which she satisfied the economic criteria.  (*Id*. at 11-12.)

On June 8, 2009, the Commissioner filed objections to the R&R.  (Doc. 25.)  Specifically, the Commissioner objected on the basis that: (1) the Magistrate Judge ignored substantial evidence supporting the ALJ's RFC finding, including the opinions from Winning's treating psychiatrist, the consulting psychologist, the state reviewing psychologists, and other evidence inconsistent with Winning's allegations; (2) the Magistrate Judge inappropriately applied the "treating physician rule" in finding that the ALJ should have adopted the opinions of Winning's treating psychologist, Dr. Patterson, and her social worker, Ms. Gaul; (3) the Magistrate Judge did not appropriately review the ALJ's credibility finding; and (4) the Magistrate Judge improperly recommended an award of benefits.  (*Id*. at 2.)

## II.    **STANDARD OF REVIEW**

In cases that are referred to a magistrate judge for preparation of an R&R, the Federal Magistrates Act requires that a district court conduct a *de novo* review only of those portions of a R&R to which the parties have made an objection. 28 U.S.C. § 636(b)(1)(C).  The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

A district court's review of a final administrative decision of the Commissioner made by an ALJ in a Social Security action, however, is not *de novo*.  Rather, a district court is limited to examining the entire administrative record to determine if the ALJ applied the correct legal standards in reaching his decision and if there is substantial evidence in the record to support his findings. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

"Substantial evidence" is evidence that a reasonable mind would accept to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence. *Id.* To determine whether substantial evidence exists to support the ALJ's decision, a district court does "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Further, a district court must not focus, or base its decision, on a single piece of evidence. Instead, a court must consider the totality of the evidence on record. *See Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

In fact, if there is conflicting evidence, a district court generally will defer to the ALJ's findings of fact. The Sixth Circuit instructs that "[t]he substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a *zone of choice* within which the decision maker can go either way without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)) (emphasis added). Accordingly, an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Nevertheless, even if an ALJ's decision is supported by substantial evidence, that decision will not be upheld where the Commissioner "fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III.   **ANALYSIS**

As previously indicated, the ALJ's decision to deny disability benefits to Winning followed the requisite five-step analysis set forth in 20 C.F.R. § § 404.1520; 416.920.[9]  Steps four and five of the inquiry require a determination of Winning's residual functional capacity ("RFC").  Specifically, the ALJ must determine whether Winning's limitations permit her either to resume her past relevant work or adjust to other jobs that exist in significant numbers in the national economy.

To make these determinations, the ALJ was required to evaluate the extent of Winning's impairment.  In this action, Winning explicitly challenged this aspect of the ALJ's decision for two separate, but interrelated, reasons.  First, Winning contended that, in finding her capable of performing light exertional work, the ALJ erred in failing to give proper deference to the opinion of her treating psychologist, Dr. Patterson and her case manager, Ms. Gaul.  Second, Winning argued that the ALJ's RFC determination is faulty because it was based, in part, on the ALJ's improper assessment of her credibility.

The Court finds that the ALJ failed to give due deference to the opinion of Winning's treating psychologist, Dr. Patterson, and further failed to provide sufficient justification for the weight given the medical opinions of record.  This failure alone warrants reversal.  Even setting aside the ALJ's violation of the treating physician rule, remand is nonetheless required because the record is devoid of any evidence supporting the ALJ's credibility assessment.

---

[9]The regulations governing the evaluation of disability for DIB are found at 20 C.F.R. § 404, and for SSI are found at 20 C.F.R. § 416.  As is indicated in the Commissioner's brief on the merits, the relevant DIB and SSI regulations at issue are identical for purposes of this case. (Doc. 23 at 2.)

15

A.    **The ALJ Failed to Evaluate Properly the Medical Opinion Evidence**

The SSA regulations promise claimants that "[r]egardless of the source," ALJs will "evaluate every medical opinion [they] receive." 20 C.F.R. § 404.1527(d).  The weight given to opinions of medical sources depends upon whether the source is characterized as: (1) nonexamining; (2) nontreating, but examining; or (3) treating.  It is well-established that when evaluating medical opinions, the SSA will generally give more weight to the opinion of a physician or psychologist who examined the claimant than to the opinion of a nonexamining source.  20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1).

Under the "treating physician rule," an ALJ generally must give greater deference to the opinions of treating physicians than those of other physicians.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  This is because treating physicians are,

> likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment[s] and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  A physician or psychologist qualifies as a "treating physician" if there is an "ongoing treatment relationship" and the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.

An ALJ must give the opinion of a treating physician controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "not inconsistent with the other substantial evidence" in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If the opinion of the treating physician is not given controlling

weight, the SSA regulations provide that the ALJ "*must* apply certain factors" in "determining what weight to give the opinion." *Id*. (emphasis added). Specifically, the ALJ must consider: (1) the "length of the treatment relationship and the frequency of examination;" (2) the "nature and extent of the treatment relationship;" (3) the "supportability of the opinion;" (4) "consistency of the opinion with the record as a whole;" and (5) "specialization of the treating source." *Id*. (citing 20 C.F.R. § 404.1527(d)(2)).

The regulations specify that the ALJ's decision "will always give good reasons" for the weight given to the treating source's opinion. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Likewise, Social Security Ruling ("SSR") 96-2p[10] provides that when a decision is unfavorable, it "*must* contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." (emphasis added).

The Sixth Circuit has characterized this "reasons-giving" requirement as an "important procedural safeguard," which is designed to: (1) assist claimants in understanding why the ALJ deems them not disabled when their treating medical professionals are telling them they are; and (2) "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544 (internal citations omitted).

In *Wilson*, the court reversed and remanded a denial of benefits, despite finding that "substantial evidence otherwise support[ed] the decision of the Commissioner," because the ALJ

---

[10]*See* SSR 96-2p (Policy Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions).

failed to provide good reasons for discounting the opinion of the claimant's treating physician.  *Id*.
at 544-46.  The *Wilson* court noted that:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.  A procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.

*Id*. at 546 (internal citation omitted).  In rare cases, the court may find that violation of § 1527(d)(2)
amounts to harmless error where the "Commissioner has met the goal of § 1527(d)(2) – the provision
of the procedural safeguard of reasons – even though she has not complied with the terms of the
regulation," but this is not the general rule.  *Id.* at 547; *see Nelson v. Comm'r of Soc. Sec.*, 194 Fed.
Appx. 462, 470 (6th Cir. 2006).[11]

An ALJ may consider the opinion of nonexamining medical sources, such as State agency
medical and psychological consultants, in determining whether the claimant is disabled.  20 C.F.R.
§§ 404.1527(f); 416.927(f).  The Sixth Circuit has indicated, however, that "the opinion of a
nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's
treating physician."  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (internal citation
omitted).  In addition, the regulations provide that "unless the treating source's opinion is given
controlling weight", the ALJ must explain in the decision the weight accorded to the opinions of a

---

[11]In *Nelson*, the court noted that the ALJ's references to the treating sources were brief
and did not provide an indication of the weight assigned to either opinion.  *Id*. The court found
that the brief references, which arose while the ALJ was discussing contrary medical evidence,
met the goal of addressing the opinions of treating sources by "indirectly attacking" the
consistency of their opinions with the record as a whole and their supportability.  *Id*. at 472.  The
*Nelson* court cautioned that the fact scenario presented was the "rare case of the ALJ's analysis
meeting the goal of the rule even if not meeting its letter."  *Id*.

State agency medical or psychological consultant.  *See* 20 C.F.R. §§ 404.1527(f)(2)(ii);
416.927(f)(2)(ii).

 The regulations provide that an ALJ "may use evidence from 'other sources,' as defined in
20 C.F.R. 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and
how it affects the individual's ability to function."  These "other sources" include  licensed clinical
social workers.  *See* SSR 06-03p: (Titles II and XVI: Considering Opinions and Other Evidence
from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering
Decisions on Disability by Other Governmental and Nongovernmental Agencies).  Although
information from "other sources" cannot establish the existence of a medically determinable
impairment, it "may be based on special knowledge of the individual and may provide insight into
the severity of the impairment(s) and how it affects the individual's ability to function."  *Id*.

 The regulations provide that an ALJ "generally should explain the weight given to opinions
from these 'other sources,' or otherwise ensure that the discussion of the evidence in the
determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's
reasoning, when such opinions may have an effect on the outcome of the case."  *Id*.  Further, the
regulations explain that opinions from non-medical sources who have seen the claimant in their
professional capacity should be evaluated by using the applicable factors, including how long the
source has known the individual, how consistent the opinion is with other evidence, and how well
the source explains the opinion.  *Id*.; *see also Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541 (6th
Cir. 2007).

 In this case, it appears that the ALJ relied upon two state reviewing psychologists, Drs. Rudy
and Lewin, in deciding Winning's mental RFC:

> From a mental standpoint, she is limited to simple one or two-step job tasks involving no intensive interpersonal interaction, fast-paced work, high production quotas, arbitration, negotiation, confrontation, or responsibility for the safety of others, *consistent with the assessment of Dr. Rudy and Dr. Lewin*.

(Tr. 18.) (emphasis added).  Neither Dr. Rudy nor Dr. Lewin are treating psychologists.  Nor did either of them perform an examination of Winning.  The ALJ's decision is devoid of any explanation of the weight given to the opinions of these two state agency psychologists.

Although the ALJ does not classify any of Winning's medical sources as "treating sources," it is undisputed between the parties that Dr. Patterson, who saw Winning forty-two (42) times between September 2004 and December 2006, is Winning's treating psychologist and Dr. Chughtai is Winning's treating psychiatrist.  The ALJ's references to the opinions of Drs. Patterson and Chughtai are brief and provide no explicit indication of the weight given to either doctor's opinion regarding Winning's mental impairments.  (*See* Tr. 17-18.)

Dr. Chughtai is only briefly mentioned in the ALJ's decision.  The ALJ notes that, although Dr. Chughtai "concluded that the claimant would have some difficulty completing tasks in a timely manner or maintaining attention when others speak . . . his findings do not suggest that the claimant would be unable to perform low stress, simple one or two-step job tasks involving no intensive interpersonal interaction."  (*Id*. at 18.)  This reference to Dr. Chughtai's opinion cannot constitute substantial evidence supporting the ALJ's decision.  Because the ALJ's decision was unfavorable, she was required by SSR 96-2p to give specific reasons for the weight given to Dr. Chughtai's opinion.  Even if the ALJ had properly addressed the weight given to Dr. Chughtai's opinion, which she does not, such an explanation would not do away with the need to address the opinion of Winning's treating psychologist, Dr. Patterson.  *See  Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742,

749 (6th Cir. 2007) (citing *Sharp v. Barnhart*, 152 Fed. Appx. 503, 508 (6th Cir. 2005)) ("Properly addressing or adopting one treating physician's opinion . . . does not obviate the need to comply with § 1527(d)(2) in addressing the opinions of other treating sources that reach contrary conclusions.").

In assessing Winning's mental impairments, Dr. Patterson opined that Winning has "marked" difficulties in maintaining social functioning, "frequent" deficiencies of concentration, persistence, or pace, and repeated episodes of deterioration or decompensation in work or work-like settings. (Tr. 328.)  The ALJ provides a brief summary of Dr. Patterson's findings and then rejects her assessment on the basis that it "rel[ies] substantially on the subjective presentation and statements of the claimant, who is not found to be entirely credible."  (Tr. 18.)  This conclusory comment, without any elaboration or detail, does not satisfy the procedural requirements for rejecting a treating physician's opinion set forth in § 404.1527(d)(2).  *See Wilson*, 378 F.3d at 546.  It is illogical, moreover, as the R&R points out, since psychology and psychiatry are, by definition, dependent on subjective presentations by the patient.  Taken to its logical extreme, the ALJ's rationale for rejecting Dr. Patterson's conclusions would justify the rejection of opinions by all mental health professionals, in every case.

The ALJ briefly states that Winning reported "extreme attention to detail" which the ALJ says "seems inconsistent" with Dr. Patterson's "report that the claimant has memory problems and difficulty concentrating." (Tr. 17.) A review of the record reveals, however, that Winning's reported "extreme attention to detail" is actually *consistent* with Dr. Patterson's statement in her December 2006 Mental Impairment Questionnaire that: "Ms. Winning's personality disorder (obsessive-compulsive personality disorder) limits her the most.  She is pre-occupied with details, rules, lists

21

and order that tasks are not completed.  She has a very rigid thought process." (Tr. 325.)[12] The Court

notes, moreover, that the ALJ does not provide an explicit analysis of each of the factors described

above – length of the treatment relationship, nature and extent of the treatment relationship,

supportability, consistency, and specialization – in connection with her decision to reject the treating

psychologist's recommendation.[13]

      The Court recognizes that, in at least one case, the Sixth Circuit has indicated that it is

sufficient for an ALJ to specifically state that the treating physician's opinion is: (1) "inconsistent

with the overall evidence of record;" and (2) based solely on the claimant's "reporting of her

symptoms and her conditions," which the ALJ found not to be credible.  *Smith v. Comm'r of Soc.

Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). The Sixth Circuit has not said, however, that such

conclusory statements would suffice in the face of the strong and extensive medical record which

exists in this case, particularly where that medical record contains instances where multiple mental

health professionals have found Winning's subjective complaints to be credible.

      Unlike the situation in *Smith*, the ALJ in this case merely states that Dr. Patterson's opinion

"appears to be based" on the subjective claims of Winning, who the ALJ finds not to be credible.

Significantly, the ALJ does not state that Dr. Patterson's opinion is inconsistent with the record as

a whole.  The Court notes, moreover, that an ALJ takes a serious risk when she assumes that a court

will be able to determine if the ALJ followed the agency-imposed procedural "good-reasons"

---

      [12]The Court notes, moreover, that fixation on detail is not inconsistent with difficulty
concentrating.

      [13]The Court recognizes that "[a]n ALJ need not discuss every piece of evidence in the
record for his decision to stand."  *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th
Cir. 2004).  Looking to the ALJ's decision, however, it is not clear that she considered any of the
requisite factors set forth in 20 C.F.R. § 404.1527(d)(2).

requirement absent language to which it can point – it is far better practice for an ALJ to specifically list those factors that she considers.

The Court further notes that the ALJ rejected the opinion of Ms. Gaul, Winning's long-time mental health services case manager, on the same grounds as her rejection of Dr. Patterson's opinion - that it is based on the subjective statements of Winning "who is not found to be credible." (Tr. 17-18.) As the Magistrate Judge noted in the R&R, Ms. Gaul's extensive progress notes regarding Winning's impairments are "replete with observations and findings." (Doc. 24 at 11.) While it is true that a social worker, such as Ms. Gaul, is not entitled to the same type of deference as is afforded to treating physicians, the regulations nonetheless suggest that the ALJ should have provided some explanation of the weight given to Ms. Gaul's opinion, particularly in light of the fact that Ms. Gaul's stated opinions were consistent with those of Dr. Patterson.

The Court recognizes that the record may contain evidence which otherwise supports the ALJ's decision. The Court requires, however, that the ALJ follow the procedures set forth in the SSA regulations so that the Court can ascertain whether the ALJ's decision is, in fact, supported by substantial evidence. The Court finds that the ALJ failed to explain sufficiently the weight given to each medical opinion and the reasons for giving that weight. Where, as in this case, there is "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions [this] denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Because the ALJ failed to follow procedural regulations designed to protect Winning, this Court reverses the ALJ's decision. The Court does not find this procedural failure to be harmless

error.  *See McLean v. Comm'r of Soc. Sec.*, 360 F.Supp.2d 864, 872 (E.D. Mich. 2005) (citing *Wilson*, 486 F.3d at 547-48)) ("The error is not harmless when the reviewing court is hampered by the lack of explanation and the rejected evidence could very well establish disability, as here.").

> **B.** **The ALJ's Credibility Determination Was Not Supported By Substantial Evidence**

Even if the Court had not already determined that reversal and remand were required because of the ALJ's failure to comply with the treating physician rule, such a result would nonetheless be necessary in light of the ALJ's failure to evaluate properly Winning's credibility.

Winning contends that the ALJ improperly discounted her credibility.  Specifically, Winning argues that the ALJ failed to assess properly Winning's mental impairments, in part because the ALJ did not have a psychological medical expert at the hearing to assist in: (1) reviewing and considering the medical evidence; and (2) understanding Winning's testimony at the hearing.  (Doc. 20 at 23.)

An ALJ's "findings based on the credibility of the applicant are to be accorded great weight and deference."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Such findings must, however, be supported by substantial evidence.  *Id*.  A claimant's credibility may be discounted, "to a certain degree," where an ALJ "finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Id.*  The ALJ is not, however, permitted to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  *Rogers*, 486 F.3d at 247 (citing SSR 96-7p: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements).  Instead, the ALJ's determination must find support in the record.

SSR 96-7p states that the ALJ's decision must contain specific reasons for the credibility

determination and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[14]  Mere "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence."  *Rogers*, 486 F.3d at 248.  A credibility assessment "*must* be based on a consideration of all of the evidence in the case record."  SSR 96-7p (emphasis added).[15]

When a claimant's complaints regarding symptoms are not supported by objective medical evidence, "the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'"  *Rogers*, 486 F.3d at 247.  "Consistency between a claimant's symptom complaints and the other evidence in the record tends

---

[14]SSR 96-7p states that an ALJ must consider the objective medical evidence as well as the following factors when assessing the credibility of an individual's statements: (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

[15]This includes, but is not limited to:

- The medical signs and laboratory findings;
- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and
- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

SSR 96-7p.

25

to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 248.

Although the ALJ is charged with making credibility determinations, an ALJ "does not have the expertise to make medical judgments." *Bowman v. Astrue*, No. 3:07CV478-J, 2008 U.S. Dist. LEXIS 73170, *7 (W.D. Ky. Sept. 23, 2008); *see also Belden v. Heckler*, 586 F.Supp. 628, 634-35 (N.D. Ind. 1984) ("It is correct that an ALJ has the obligation to observe the plaintiff to make the necessary credibility determinations. However, the ALJ may not substitute lay observations for expert medical evidence."). ALJs are not mental health experts. Depression, anxiety, and other mental health disorders require specialized training to evaluate and diagnose. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (noting that "health professionals, in particular psychiatrists, not lawyers or judges, are the experts" on mental illness). As a result, an ALJ cannot substitute her own lay opinion of mental illness for that of a medical expert. *See Wiggins v. Apfel*, 29 F.Supp.2d 486, 492-93 (N.D. Ill. 1998) (noting that the ALJ improperly substituted his lay opinion of depression and anxiety for that of a mental health expert).

In this case, the ALJ discounted Winning's credibility based primarily on: (1) perceived inconsistencies in Winning's hearing testimony; and (2) Winning's daily activities. Specifically, the ALJ stated that:

- "At the hearing, her testimony was vague, inconsistent, evasive, and exaggerated. She gave a vague and exaggerated explanation for her anxiety that was not credible." (Tr. 19.);

- "The claimant occasionally dines out, and socializes with her sister and friends (all activities that are inconsistent with an inability to socialize)" (*Id.*);

- "The claimant's memory and abilities to concentrate and socialize are not as impaired

26

as she alleges" (*Id.*); and

- Winning's "subjective complaints are disproportionate with and not supported by the objective and substantial evidence in the record to the extent they suggest that she is disabled."  (Tr. 19, 21.)

The ALJ does not point to specific psychological medical evidence in the record to support her conclusion that Winning was not credible.  The ALJ's conclusory statement discrediting Winning's testimony regarding her anxiety was made without relying on *any* medical evidence or authority.  Indeed, it seems that the ALJ used her own opinions about what symptoms a person with anxiety should exhibit to discount Winning's testimony.  In doing so, the ALJ improperly substituted her own lay opinion of anxiety disorders for the opinion of the treating psychologist who diagnosed Winning with major depression, anxiety disorder, and obsessive compulsive personality disorder.  In addition, while the ALJ characterized Winning's testimony as evasive, the record contains evidence, including the opinion of her treating psychologist Dr. Patterson, that would explain Winning's testimony in a manner consistent with her mental impairments.  (Doc. 20 at 23-24.)[16] Because the ALJ is not a psychological expert trained to assess whether particular testimony is consistent with, and perhaps indicative of, certain mental impairments, it was inappropriate for the ALJ to substitute her lay opinion for that of Winning's treating mental health professionals.

The ALJ does not discredit Winning's testimony relating to her mental impairments as being

---

[16]For example, when the ALJ questioned Winning on the types of books she reads, Winning fixated on trying to recall the name of a particular author and the dialogue became somewhat adversarial.  (Tr. 385-86.)  Winning submits in her merit brief that her fixation on remembering the correct name is consistent with Dr. Patterson's findings that Winning is "easily distracted and extreme attention to detail makes completing tasks in a timely manner difficult . . . Easily irritated and extreme circumstantial speech strains social interactions . . . She had difficulty thinking clearly to resolve prob[lems]."  (Doc. 20 at 24 (citing Tr. 148-50)).

inconsistent with the evidence as a whole. The only reference the ALJ makes to the record as a whole is a conclusory statement that Winning's "subjective complaints are disproportionate with and not supported by the objective and substantial evidence in the record." (Tr. 19, 21.) The ALJ repeated this statement twice – once with respect to Winning's physical limitations and once as a mere conclusion in her findings regarding benefits. The first time, the ALJ stated:

> the claimant's subjective complaints are disproportionate with and not supported by the objective and substantial evidence in the record. Dr. McCloud and Dr. Congbalay concluded that that Drs. McCloud and Congbalay concluded that the 'claimant's statements regarding disability are not consistent with objective findings.' (Tr. 19.)

It is undisputed that Drs. McCloud and Congbalay only assessed Winning's physical impairments. As a result, their opinions cannot be used to discredit Winning's credibility with respect to her mental impairments. Nor can they be used to suggest that Winning's statements regarding her mental limitations are inconsistent with the *psychological* medical evidence of record. Indeed, Winning's testimony that her depression and anxiety kept her from working is consistent with the opinions of her treating mental health professionals. The second time the ALJ made this same conclusory pronouncement was in her findings regarding benefits. In those findings, the ALJ does not identify which evidence in the record Winning's subjective complaints are allegedly "disproportionate with and not supported by."

The Court finds that the ALJ neglected to consider the record as a whole in making her credibility assessment. As a result, the ALJ's consideration of Winning's credibility does not comport with the SSA requirements. In particular, in making her credibility determinations, the ALJ failed to discuss statements from Winning's treating psychologist, Dr. Patterson, regarding Winning's symptoms and how those symptoms would affect her ability to work. At the hearing, the

V.E. testified that incorporating Dr. Patterson's opinions regarding Winning's mental limitations –
specifically her opinions that Winning has frequent difficulty maintaining concentration, persistence,
or pace and marked limitations in maintaining social function – would preclude employment.  (Tr.
404.)  The V.E. further testified that if Winning had the mental limitations she described in her
testimony, she would be unemployable.  (Tr. 402.)

Based on the foregoing, the Court concludes that substantial evidence does not support the
ALJ's credibility assessment and therefore this matter must be remanded for further proceedings.
Given the nature of Winning's mental impairments, assessment of her credibility is inextricably
intertwined with assessment of her psychological conditions.  It is undisputed that the ALJ did not
have a psychological medical expert at the hearing to assist in understanding the medical significance
of Winning's testimony and whether her testimony was consistent with her mental impairments.[17]
The Court recommends that, on remand, the ALJ involve a psychological expert qualified to testify
as to Winning's mental impairments and to participate in credibility determinations.

### C.    The ALJ's Decision Must Be Remanded for Further Proceedings

The Court finds that substantial evidence does not support the ALJ's decision because:
(1) there is insufficient information in the record to explain the ALJ's rejection of the treating
psychologist's opinion; and (2) the record does not support the ALJ's credibility determination.  "If
a court determines that substantial evidence does not support the [Commissioner's] decision, the
court can reverse and immediately award benefits only if all essential factual issues have been
resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y*

---

[17]The ALJ even admitted during the hearing that perhaps a supplemental hearing with the
assistance of a psychological expert would be necessary.

*of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). A claimant is not clearly entitled to benefits unless "the proof of disability is overwhelming or . . . the proof of disability is strong and evidence to the contrary is lacking." *Id.* In other words, if there is evidence contrary to a finding of disability, "proof of disability is unlikely to be overwhelming and cannot be considered strong." *Martin v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 191, 202 (6th Cir. 2003) (Moore, J., dissenting).

In the present case, there is conflicting evidence as to the severity of Winning's mental impairments. The ALJ based her denial of benefits primarily on the opinions of two state agency nonexamining psychologists as well as Winning's testimony regarding her daily activities. As the Magistrate Judge noted in the R&R, the opinions of Winning's treating psychologist and long-time social worker support a finding of disability benefits. This conflicting evidence demonstrates that all essential factual issues have not been resolved and therefore an immediate award of benefits is improper. As a result, the Court remands the matter for further factfinding by the ALJ, including an opportunity to hear testimony from a qualified psychological expert regarding the impact of Winning's mental impairments on her ability to work.

## IV.   <u>CONCLUSION</u>

The Court finds that the ALJ failed to follow the required procedure in evaluating and weighing the medical opinion evidence presented. The Court further finds that the ALJ's credibility determination is not supported by substantial evidence. As such, for the foregoing reasons, the Court

declines to adopt the R&R, **REVERSES** the ALJ's decision to deny benefits, and **REMANDS** to

the ALJ for further proceedings consistent with this opinion.

      **IT IS SO ORDERED.**

*s/Kathleen M. O'Malley*
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:  September 28, 2009**